Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention for the Court is now sitting. God save the United States and this Honorable Court. Good morning and welcome to the Fourth Circuit virtually. We appreciate whatever y'all have had to do to make this remote argument possible. We know it's not ideal. I hope y'all are safe and the weather's not too much of a problem for everyone, but we're going to do our best to make this remote argument work. Thank you for being here. I hope you can see the clock and everything, but we'll proceed otherwise, just like we were in Richmond. With that, counsel will hear from you. Thank you. Good morning, Your Honors, and may it please the Court. Parisa Sadeghi on behalf of Petitioner Josselyn Rodriguez-Solis. Both the Due Process Clause and the INA guarantee non-citizens the right to be heard by counsel in a removal proceeding, and a, quote, necessary corollary, to use the Supreme Court's language in Chandler, of the right to be heard by counsel is the right to a reasonable opportunity to obtain counsel and permit them to prepare for the hearing. What constitutes a reasonable opportunity depends on a case-by-case, multi-factor inquiry that accounts for the non-citizen's particular circumstances. And here, that inquiry yields a clear answer. My client was not given a reasonable opportunity to secure counsel. The BIA concluded otherwise, based on a single factor. It reasoned that because Ms. Rodriguez-Solis had approximately one month to secure counsel, she had a sufficient amount of time for the task, so there was no violation. That conclusion was incorrect, and this Court should say so. At a minimum, it should vacate the BIA's decision and remand for the BIA to conduct a proper reasonableness analysis that accounts for the many relevant factors that rendered the amount of time here unreasonable. I welcome the Court's questions. Counsel, is the standard under the statute the same as the standard under the Due Process Clause? We believe, we don't take a position on whether the standard in all cases would be the same. We do, and we don't think the Court needs to decide that in this case. We do think that, at least for purposes of this case, both the statutory and the constitutional right were violated. But we don't take a position on whether there might be certain cases where the standards might diverge, for one reason or another. Wait, so, I read your brief as pretty clearly taking a position that they're exactly the same and not providing any support whatsoever for that assertion. So, are you walking back the assertion in your brief, or are you making a different assertion today? So, if I understood the question correctly, and perhaps I did and I apologize, I understood it to be whether the two rights are sort of coterminous or the same. And as for what the applicable standard is... Right, but on your brief, you said they were equivalent, which is another way of saying they're the same. So, are you still saying that, or are you not still saying that? As far as I'm aware, the standards are the same, and we think as applied here, they are the same. But we don't think the Court needs to take a position in this case on whether they're exactly the same, on whether there are cases on the margins where the standards would apply differently. But for purposes of this case, they're definitely the same, and we think the inquiry proceeds in the same way. And so then, pursuant to the doctrine of constitutional avoidance, we would not need to reach the due process issue, if I'm understanding you correctly? That's exactly right, Your Honor. We think that the narrowest way to decide this case is the statutory route, for a number of reasons. For one, under the doctrine of constitutional avoidance, but also because, as I understand the government, the government is not disputing that there's no prejudice requirement under the statutory standard. Well, see, now I have the problem with that, is that I don't understand how that makes a lick of sense, because there is a prejudice requirement under the due process clause, and so I don't understand how a statutory right that implicates an underlying constitutional provision could be more favorable to the non-citizen in this context than the Constitution is. Your Honor, our position is that there is no prejudice requirement under either standard, so I agree with you that it would be inconsistent to have a prejudice requirement under the constitutional standard and not under the statutory standard. If I had to guess, the reason that the courts that have found a prejudice requirement under the constitutional standard have done so is because they've been applying, without reasoning, the general procedural due process requirement in this context. And by courts, you mean including this one, which has said that? I don't read this court's precedents to squarely decide that issue, and I can go through the cases that the government cites in support of that proposition. The government, I read the case as most heavily relying on Gene V. Gonzalez, but in that case, the court- Wait, wait. What about Rousseau? Rousseau was not a right to counsel case, Your Honor. But it is a due process case, and we said the due process clause requires prejudice. Yes, it is a due process case, but it is not a right to counsel case, and I take the Supreme Court's precedent to clearly state that the deprivation of a right to counsel is an error that's different, categorically different, from any other sort of- Well, hold on. The Supreme Court has said the deprivation of the Sixth Amendment right to counsel, but we're pretty far afield from the Sixth Amendment because we're in a removal proceeding where the Sixth Amendment doesn't even apply. I agree that the Supreme Court has said that in the context of the Sixth Amendment. That said, the reasoning the Supreme Court has used to find that there is no prejudice requirement is not dependent on the fact that the right comes from the Sixth Amendment. Gonzalez-Lopez, I think, is the best case on this. In Gonzalez-Lopez, the court was considering whether the deprivation of the right to proceed by counsel of one's choosing entails a harmless error analysis, and Justice Scalia in that case, when he was evaluating the harmless error question, his reasoning turned entirely on the nature of the error, and specifically on the impossibility and impracticality of conducting a prejudice or harmless error analysis when the deprivation is of this sort. And the reason, he said, is because when you're dealing with the right to counsel, doing a harmless error analysis requires speculating about an infinite number of questions and different decisions that a counsel might have made differently. Not just that. You might have to evaluate the counsel's demeanor in the courtroom, the counsel's relationship with the prosecutor, and so on and so forth. There are too many uncertainties, and the end result is that the harmless error analysis becomes completely speculative. And so, is it not that prejudice is required, but that prejudice is presumed in these circumstances rather than what you're suggesting, that prejudice is not a requirement? Is it fair to say that prejudice is a requirement, but it's presumed under the circumstances of deprivation of right to counsel? Yes, Your Honor. I think courts have also put it that way, and either way, the end result is the same as we see it. In both situations, it's the burden is not on the non-citizen to prove that there was prejudice in any given situation. Counsel, can I maybe go back to the question of whether there's a violation before we get to prejudice?  If we're talking about the statutory right, I understand your position to be, I guess it says privilege, not right, but put that aside. But whatever it provides, you contend that it means a reasonable amount of time to obtain counsel, as I understand it. And I understand your position to be that interpretation of the statute is a question of law, whether it means a reasonable amount of time or not. Assume I'm with you so far there, isn't then the agency's application of that standard, whether there's a reasonable amount of time, a question of fact? No, Your Honor. I understand that it certainly involves certain factual application of certain standards to the fact, but this is, I think, a classic sort of reasonableness totality of the circumstances inquiry, which this court said in Williams, this court historically and has long consistently applied, excuse me, reviewed DeNovo. So you would say an immigration judge lists a bunch of reasons why a continuance is not granted. You would say even if we grant that the standard is a reasonable amount of time, that we would DeNovo review the immigration judge's application of all those factual factors? That's correct, Your Honor, and I do think that's consistent with this court's decision in Williams. So in Williams, for example, the court was reviewing an equitable tolling issue, and of course those inquiries are different. That inquiry is different from the one at issue here, but it's similar in the sense that it involves a consideration of factual circumstances and a totality of the circumstances, and this court specifically considered whether or not that was a question that veered more in the factual direction and therefore wasn't subject to DeNovo review, and it squarely that it was subject to DeNovo review on the grounds that these totality of the circumstances inquiries often involve determining auxiliary legal principles, what factors are relevant, what factors are not, which factors should be weighed more heavily, which factors less heavily. Can I just ask you, this has just been bothering me about this whole framework, this picking up Judge Quattlebaum's question. I want you to imagine this was a criminal case. It's not like we don't see these criminal cases, right? The defendant's lawyer withdraws, and he says, I need six months to find a new lawyer, right? I need a six-month continuance to find a new lawyer, and the trial judge says, that's ridiculous. It doesn't take you six months to find a new lawyer. Six-month continuance denied. We are going to trial as scheduled two months from now. I just don't think there's any way we would ever review that decision DeNovo as an appellate court. It seems inconceivable to me that we wouldn't review that seemingly to me extremely analogous situation. Because technically speaking, right, it's not like, when I think of denial of the right to counsel of choice, these are cases to me, the classic example case there is where the trial judge wrongfully concludes the lawyer has an unwaivable conflict of interest and thus forbids that person from being your lawyer or refuses to let you represent yourself and thus denies the right to self-representation. This is at best an indirect denial of the right to counsel of choice. It's the indirect denial by refusing to give more time to find another lawyer. And it seems to me that if this was in the criminal context, we would defer quite heavily to the trial court's assessment about whether you had enough time to find another lawyer. So it just seems weird to me that in this context would be less deferential. Could you tell me what's wrong about that? Your Honor, I'm not super familiar with the standard of review this court would necessarily use in the criminal context. That said, taking the premise of your question that this court would review that deferentially, I do think that under this court's precedent in the context of removal proceedings as well, what matters is the discreet question that's underlying the decision that the IJ or that the IA made. So it's true that here the decision made was to deny a continuance, to refuse to give more time. But the question that's being raised on appeal here is whether that decision violated my client's statutory and constitutional right to counsel. It violated it if and only if the IJ ... So I guess we all agree that if someone walked into a hearing and said, well, I can't proceed today. I don't have my lawyer with me. And then the IJ says, well, where's your lawyer? And it's like, I just forgot to tell her. The IJ could say, forget it. We're going to the hearing today. And we would never consider that a denial of the right of counsel of choice. That's the failure to show up with your lawyer. So I know you want to turn it into the denial question, but it feels to me like lots of enterprising litigants could try to turn something into the denial of the right to counsel of choice. You forced me to go to trial on the day that my lawyer was really busy. And normally we would not say that's the denial of right to counsel of choice. Why is it ... Sorry. I do think that the Supreme Court, for example, has treated situations like that as the denial of the right to counsel. So for example, in Chandler, I believe, excuse me, in Reynolds, the defendant there had an attorney, but the attorney couldn't make it to that, wasn't there yet. And the Supreme Court said, all right, the denial of a continuance in that case was the denial of the right to counsel. So I do think that even though I understand your honors question, that it's a step removed from precluding the attorney from entering the courtroom, it can't be that that's the line drawn by the right, because otherwise the right would be effectively meaningless. So it has to be that the right includes something more than just you get to walk through the doors with your counsel. So counsel, just kind of going past that issue of how we review it, is there a decision in the immigration context where any court has held that six weeks is not enough time to get counsel? I mean, I know you want to probably challenge the six weeks premise for some things, but just humor me and say, I think it's six weeks. Is there any decision that finds that to be insufficient time? Yes. There are multiple decisions, your honors. So I would point you first to Usubakunov. That's a decision from the Ninth Circuit. The court there found that the non-citizen had 201 days, so roughly six months to find counsel, and his inability to do so in that time did not mean that he wasn't entitled to a continuance. And the court there looked at the totality of the circumstances and determined that given his circumstances and the obstacles he was facing, six weeks was not a reasonable opportunity. I would also point this court to Fraza. That's a Third Circuit decision that we cite. In that case, the non-citizen effectively had one year to find counsel, and the court still found he was entitled to more time to find counsel. I just want to caveat that Fraza was slightly different in that the non-citizen there showed up to his hearing with a lawyer he had found 24 hours before the hearing, and his lawyer then withdrew after not being given more time. But analytically, I don't see that. What's your position of how much time your client was entitled to as a matter of the statute? I don't know exactly how much time, Your Honor. That said, the record suggests that had she been given even a little bit more time, say a few weeks, a couple weeks, she may well have succeeded in finding an attorney. So how do we know? I mean, you're entitled to come here and say what's wrong, but it's a little bit hard to say what's wrong when you won't say what's right. And I know you think it's case-specific, so I'll limit it to this case. What would be the amount of time that, under the statute, you say your client was entitled to? In this case, I think a reasonable continuance might have been another 30 days, for example. It would depend on a number of factors, including, for example, whether the... It would depend on a number of factors, and I'm sorry I'm parroting that to you, Your  But I think in this case, given that my client managed to contact Attorney Lopez, who ended up representing her on appeal before the BIA, right before the hearing... Excuse me, right before her pre-hearing submission deadline, it seems very likely that given a month or maybe even less time, she may have been able to secure her claim. But it sounds like the answer to your question kind of means, well, we just got to see whether it works out that the lawyer's there and ready. So there's... It sounds like a kind of squishy way of looking at this, that we got to see, because maybe Mr. Lopez would have had another case and it would have taken five weeks rather than six weeks. I mean, I don't see a lot of ability to ever know under the way you're looking at it. And I know you're over time. If you could answer, you certainly have permission to answer that. Thank you so much. I sympathize with the sort of squishiness of the inquiry. Starting there, though, I will say courts routinely do apply this kind of squishy inquiry and then leave the ultimate decision of how much more time to the IJ or to the BIA. The second point that I'll make on this, Your Honor, is that the BIA didn't engage in any of this sort of analysis and jumped straight to the fact that because my client had approximately one month, she had a sufficient amount of time. And so even if this court disagrees with everything I'm saying, at a minimum, the BIA itself should have tried to engage more in this multi-factor inquiry. And then the last point I'll note is that while it's true that it's hard to pinpoint an exact number of days, I think that's just true in any reasonableness inquiry. Reasonableness is by nature a squishy factor, but it's one that this court applies regularly in other contexts. And this is just yet another context where I think the law requires it to be applied. Thank you, Counsel. Thank you. Mr. Couch? Good morning. Let's make – hold on a second. I'm sorry. I think I want to make sure the clock gets set before you begin. I believe I'm reserving. Excuse me again. I think that's the wrong amount of time. The time should be 20 minutes. All right. There you go. Good morning, and thank you so much for that. This is Greg Couch representing the U.S. Attorney General. I'd like to begin by pointing out that we think that this is a very narrow case, narrow issue that's being presented to you here. In a lot of right-to-counsel cases, they often arise with petitioners, usually detained, usually indigent, who end up going through the process, and they never have a lawyer to help them. And we later find that the immigration judge should have granted more time under the circumstances and didn't, and courts struggle with the prejudice inquiry there, because you just don't know really what would have happened if the person had had a lawyer to go over their rights with them and to potentially help them prepare their case. This is entirely different. Ms. Rodriguez had counsel who diligently, diligent counsel it appears, helped her prepare an asylum application and a written statement, and was able to get witnesses and an interpreter for a witness, and also evidence from Honduras. So she had a lot of help in presenting the foundation of her claim. And so what happened here is when she showed up at the merits hearing, the previously scheduled merits hearing, well, Ms. Aziz had withdrawn from the case. All we know about that is that she says that her client failed to cooperate with counsel. That's all we know. And the immigration judge made a decision. We would go forward, and the immigration judge would take the testimony. And I would refer the court to the transcript. What she said was she wanted an attorney to help her present her case, not to look at new claims, not to further investigate it, just to present her testimony. So from a Fifth Amendment perspective, does it make the hearing fundamentally unfair for someone to testify without a lawyer? Well, certainly not. That happens every day. That happens every day in immigration courts. It's not a due process violation. It's a statutory violation. Was she denied the right to have an attorney? Well, absolutely not. Nobody told her that she couldn't have an attorney. That's not the issue here. The problem is that she wanted more time to find an attorney. And so now we get to the question of matter of CB. The BIA looks at, did you have a reasonable period of time under the circumstances? So do you disagree with the reply brief's assertion that Ms. Lopez was never told that she'd be required to represent herself if she didn't have a lawyer? Mm. The reply brief at page 12 asserts that she was never told that by the exec. Your Honor, I don't recall reading in the record that. I think because at the prior hearing... So what I'm asking you is, are you prepared to... I presume you read the reply brief. Are you prepared to say that a statement of fact that is made in the reply brief is wrong? I am not prepared to say that at this time. If I find otherwise, I can let the court know. But there may have been something at an early master calendar hearing. But because she was always represented by counsel, then probably just hadn't come up in any of the earlier hearings. But still, the immigration judge took the testimony from her and asked her about the claim. Hold on. We would never say that a criminal defendant who's sitting at trial, whose lawyer gets COVID or something, and the judge says, we're going to trial today, but no big deal. All we were going to do today was take your testimony, and we can do that without your lawyer here. No one would ever say that that's not the deprivation of the right to counsel. Well, and I appreciate you raising the question. I think that brings us to the question of Romero v. Bondi, the decision that this court entered after briefing. Romero v. Bondi specifically said the Sixth Amendment only applies in criminal cases. It doesn't court in all of the Sixth Amendment... No, no, no. I'm not trying to import in all of the law of the Sixth Amendment. I'm just saying, in response to the argument that Ms. Lopez didn't have counsel of her choice at the hearing, you're like, it's no big deal because all we're doing is taking her testimony. And I'm just analogizing to a criminal case that we would never say... We wouldn't say that in a civil case. We wouldn't say that if all we're doing today is taking the defendant's testimony, it's no big deal if the defendant's lawyer couldn't be there, and the judge refused to grant a continuance. Well, in Russo v. INS, this court held that the government does have a special interest in enforcing immigration laws. And we have a tremendous backlog of cases. This case has been pending for many years, some of it with administrative closure, which the government agreed to and she agreed to. There were other extensions for her pregnancy. Yes, there's one for COVID. Yes, we have all the witnesses assembled. We also had a Honduran sign language interpreter, which are hard to find. Yes, we do assert that it is reasonable under those circumstances for the immigration judge to say, well, we're going to take the testimony. I'm going to lead you through this. Hold on, you just mentioned several things that this got delayed. So in terms of other things that are represented on the other side's brief, they also represent these hearings were postponed several times sui sponte by the IJ. Is that also correct? It was sponte. They were one was for the pregnancy. She requested a continuance for the COVID continuance. I can't really characterize like like whose continuance was that. It's if she was exposed to COVID and didn't have a negative test. So it just couldn't go forward. So I think Judge Heitens is talking about the several administrative notices of postponing the hearing that both parties seem to say there's real no explanation for. And I think the implication of it to be is, is that really to be held against her? If the IJ administratively does that for whatever reason? Well, Your Honor, it is part. I mean, it is part of the backlog of the case. I'm sorry to say that, but the immigration courts are very busy and sometimes cases are, in fact, rescheduled. And that's a different point. I mean, you may have a point that the case is old and needs to be processed and the government has an interest in that. I think that's a point. But to the extent you're talking about multiple continuances, if she didn't request them, I wouldn't think you would be able to say she. Those are somehow negatively or attributable to her conduct. Well, then perhaps I should bring the court back to what is our primary point in our briefs, which is that from her own testimony, what she said in immigration court was that she had started looking for an attorney after what she says the Carrera motion was denied. And so that happened at the August 9th hearing. And that takes you to October 18th. So by our calculation, that's about two months for her to be looking for an attorney. So counsel, before I'm sorry to cut you off before you finish that point, but this relates. I had asked your colleague the way we should look at the agency's decision about saying basically about continuing the case, which seems to get at whether or not the petitioners had enough time to find new counsel. In your brief, you talk you say a due process violation. We review de novo, but I didn't see anywhere where you where you state how we should review the IJ's decision under the statute to determine whether or not, you know, that the petitioner should have more time to get counsel. Is it and we're not necessarily bound by the party's positions on stats on standard of review. But do you review that? Do you view this as a question of law or do you say that we should look at the IJ or the agency's decision with some deference? Well, so first of all, just let me say with regard to the statute, because I made the point before and I do want to emphasize it again. Nobody denied her the ability to bring an attorney to court. I think if you ever have a case where the immigration judge says, no, you're not allowed to have attorneys. I only I do all of the testimony myself. That would be counsel. I'm not trying to keep you from making that. And I understand that argument. I think you said that. And I'm not my questions not to indicate I agree or disagree with that. I'm trying to focus, though, on what happened at the hearing when she requested a continuance. And let's assume just for the sake of discussion, we're just talking about that. And the question about whether she should have had more time to get a new counsel that that immigration judge went through a bunch of reasons that she decided not to permit more time. And the BIA found that affirmed that decision is is is our review of that a question of law or a question of fact? Well, the way that we looked at it was that they can they could have crafted their claim in one of two ways. One is you could say that this is a constitutional Fifth Amendment violation of due process. And for there you have de novo review, which is a very generous standard of review for this court. But it's a very high standard of error. They would have to show that it's fundamentally unfair. They could also craft their claim as an abuse of discretion. So there it would be sort of a lower standard of error, which is just simply should the judge have given her more time. But then there would be a more much more deferential review would be. But what's your basis? What's your basis of saying that if we're not in the due process world, we're in the statutory world, that it is. Yeah, it's a question of fact that would be for abuse of discretion as opposed to a question of law that we review de novo. Well, I think like in the statutory world, we seem to be focusing in on the question of whether she should have been given a whether she needed more time in order to get counsel. And that we are drifting into the reasonableness inquiry and the factual abuse of discretion inquiry that we would say, yeah, well, what is reasonable? There should be some deference to the agency. Do you have authority that would support that? Not at the moment, but I believe that that's just generally a principle that when we're looking at something like reasonableness, that is generally reviewed for use of discretion. OK, thank you. Well, I think that your friend on the other side is saying that this is a mixed question. And the question is whether the test that is the totality of circumstances test has been properly applied. So the legal question would be, did the BIA apply the test? And then what are the factors considered? And so I guess the question is, if it is a mixed question, do we review the legal bill? Well, I think that any time that you come to the facts, I mean, there has to be some deference to the agency because they they decide the facts. You take the facts and apply them to a legal standard. And I guess we just keep coming back to the question of what is she entitled to under the standard under the statute? She's entitled to bring an attorney with her. The statute doesn't specifically say you must get this time of that amount of time to find an attorney. The only thing we could find was you have to get at least 10 days at the start of the removal proceedings, which doesn't really really apply here. It all seems to be turning on the BIA's application of matter of CB. And again, we think that matter CB is is applied correctly here. It's eight weeks. According to her statements, other courts have found that period of time to be reasonable to find an attorney. And again, this is just a different sort of taking the facts as the BIA found them. The BIA finds that the respondent had approximately one month before her scheduled hearing to obtain counsel. And then seems to me that the BIA simply finds as a matter of law that one month is sufficient time to retain counsel before the final hearing, that there wasn't any analysis of the specific facts, whether and why that would be a reasonable and realistic period of time to seek, speak with and retain counsel. Well, but if it's the NoVo review, then I think you would be able to look at the issue anew. And as we pointed out in our briefs, she said that she had been looking for an attorney ever since the Carrera motion was denied. So it would be entirely eight weeks. But still, even at the four week level, again, given the unique facts of this case, that she already had an attorney to to prepare her claim for her and to marshal her evidence. And she was just coming in to testify in support of the claim. But that seems reasonable. And I think it would have been no one would have even raised a question about this except for on cross examination. DHS counsel revealed for the first time that she gave a statement that was very contradictory to the statement in support of her own asylum application. Otherwise, this would have been a run of the mill case. You know, hindsight's always 20 20. People come to immigration court. Their their their attorneys have withdrawn. The immigration judge takes a testimony. And, you know, in many cases, the the application is granted. I think this is all they ask for a continuance. But in those in those run of the mill cases you're talking about, does the individual ask for continuance in order to be able to obtain counsel? You know, I'm just speaking hypothetically, Your Honor, but I can imagine the situation where people do request more time and, you know, more time is not given to them. I think it's all hindsight is always 20 20, because, you know, here we have this big explosion when this statement came out that was contrary to what she had said in her own asylum application. And I think now we're all looking back and say, well, maybe she needed an attorney to help her prepare, you know, for this cross examination that was coming. But at the time, I don't know that Mrs. Z's even knew that this was going to be the case. But if she had an attorney there, the attorney might have known to object that they had never seen this before, ask for time to review and speak with their client. That seems to go to the issue of prejudice. Your Honor, in immigration cases, the rules of evidence are relaxed. I will say that in my years of doing this, there are many, many, many times a DHS counsel brings out a document from the administrative record. We haven't even seen before they bring up on cross examination. Immigration judges always allow that into the record. I can't imagine any attorney would have found a way to keep the statement that she wrote in Mary's case away from the immigration judge. So I just can't imagine that. So I think at that point, you know, the die was cast. But I don't think. But again, we always have to go back and put ourselves in the shoes of the BIA and of the immigration judge. The immigration judge is there in the beginning of the case. She doesn't know that, you know, this is all going to blow up on cross examination. It would be we assert that it's a very reasonable thing for the immigration judge to decide. We're going to go forward with this case and I will take the testimony for you. So you're suggesting that the privilege to counsel, the statutory privilege to counsel doesn't extend to the hearing, that there's no statutory violation. If the immigration judge goes forward when without offering an opportunity for counsel. And again, I'm sorry if I sound like a broken record, I keep repeating myself. But nobody prevented the statutory right to counsel. Nobody prevented her from bringing an attorney with her. The issue here is that she had difficulty finding an attorney within within the time that was available to her. There's no dispute that that can violate the right to counsel. I mean, I tend to think your friends reliance on Powell versus Alabama is a little bit aggressive in this context. But still, like in Powell versus Alabama, they had a lawyer there. And you just keep saying, like, as long as no one stops you from having a lawyer, there can't be a denial of right to counsel. And that has to be wrong. Right. There are times at which saying the trial starts right now and you say, well, my lawyer is in traffic, but she'll be here in half an hour. And the judge says we're going to trial right now. That's denial of the right to counsel. Right. Under matter of CB, under normal human speech, that's a denial of the right to counsel. Right. Your Honor, I'm not I'm not prepared to go that far. I think that we have a statute. You can say there's no situation in which saying please, please, please, please, please don't start the hearing. My lawyer was just in a car accident. But the good news is she's rallied and she's five minutes away. And the IJ says, nope, we're going forward. You wouldn't even conceive that's the denial of a right to counsel. Well, the car accident hypothetical that that is a very powerful one. I think my concern why I don't want to conceive things to you, Judge Hayden's, is that, you know, I don't want us to get into a position where someone comes to court and says, I'm not ready today because I don't have a full attorney. I'm not ready for the next hearing. And I think you alluded to that in an earlier question. Even in criminal cases, you can't just keep coming back to court and saying, well, I'm not ready because I don't have my chosen attorney yet. So to us, what we see in the statute is that you have a right to bring an attorney with you to court. And as far as how much time you need, we think that that is all provided for under a matter of CV. I don't think that and I'm not sure if this court is prepared to issue a decision that says you must be given X amount of time or X amount of time in these circumstances. We can certainly think of all sorts of hypotheticals. But when you have a case where somebody has already had an attorney, has already prepared the case, provided the documents, and has already been given a week, has been looking for an attorney for about two months, we would assert that there is no reason for the court to find error in the agency's decision and remand for further proceedings. And I thank you very much for your attention. Judge Hytens, do you have any other questions? Judge Berner? Thank you, counsel. I think, counsel, you have now, well, let's let the clock get set and then we'll let you go to, there we go. Thank you. I'd just like to address a few points that were raised in my friend's argument, Your Honor. Starting, I think, with the standard of review, I do really think Williams is on point here. My friend on the other side did not identify any authority suggesting that this sort of reasonableness analysis is not subject to de novo review. And if you look at 59F4 at 637-38, this is where this court in Williams lists a number of reasonableness tests that it has historically evaluated de novo. And it says this totality of the circumstances test is exactly the sort of situation where courts might be making ancillary factual determinations, but the thrust of the inquiry is legal and therefore reviewed de novo. At most, I think the specific factual premises of a reasonableness analysis might be evaluated for abuse of discretion. But that's exactly why, as Judge Berner pointed out, the BIA's reliance on the single month, approximately one month timeframe here, is a premise that need not be questioned in this case, given that that's a factual premise the agency was relying on. So, counsel, could I stop you there? You said several times that the BIA just talked about one month, but I'm looking at JA4, the BIA decision, and it's two paragraphs of discussion about the continuance question. It lists a lot of things that the immigration judge talked about, lists a bunch of facts, and it certainly said approximately one month. I mean, it looks to me like the BIA largely summarizes what the IJ did, and certainly if we look at the BIA, it's not just the one month. It's the consideration of all those factors in there, including that she had been represented before. So, anyway, I just feel like that seems to be singling out one part of a two-paragraph discussion of that where you also affirm that immigration judge that listed other factors. Your Honor, I read JA4 a little differently. I read that first paragraph on JA4 as essentially summarizing the IJ's reasons for denying the continuance, which really were just that the case had been pending for 10 years and that the IJ and the government were ready to go. We think that would have been invalid for its own reasons, but the decision on review here is just the BIA's, so I'll focus on that. And then the second part of that paragraph just summarizes the argument that my client said she didn't have enough time to find an attorney. But that's oversimplifying the arguments that my client made, notably when she was proceeding on her own. She made a number of other arguments to the IJ. This is on pages 127 to 128 of the JA that the BIA didn't even mention. For example, the fact that the court was facing a difficult time when she was looking for counsel. Of course, it was in the middle of COVID. There was a border surge. She explained that attorneys weren't scheduling things for less than a month out. So, again, that's missing from the BIA's analysis. And then I take that second paragraph to be the BIA's conclusion, saying we ignore all of that, or excuse me, we reject all of that. And we hold only that she had approximately one month and therefore enough time. So that said, even if this court were to review the IJ's reasoning, I still think the result is the same. The IJ, and this goes to something that my friend was discussing, the IJ relied on the amount of time that this case had been pending. But as Judge Heitens and as Judge Berner noted, much of that time was not attributable to my clients, to anything that my client did. Many of those continuances were sua sponte by the IJ. The counsel, I grant you, I think that's a fair point. But, I mean, let's cut it in half. I mean, if the case has been pending five and a half years, you know, I just picked that. Maybe you would say four years. But, I mean, the case is old. And, you know, trial judges in administrative context and in every other context in the world have an interest in moving cases along. So maybe 11 is not all attributable to your client. But under any circumstance, the case is old, and that's a factor that would weigh against your client, wouldn't it? I think it depends on why the case is old, Your Honor. I think if the only reason the case is old, for example, you can imagine a case that was administratively closed for 20 years and was reopened. I don't think it would be fair in that case to hold the length of time the case had been pending against my client. And I think the reasonableness test accounts for this. That's the beauty of the test. It accounts for the length of the proceeding and the reasons for the length of the proceeding. May I finish my answer? I see my time is about to be up.  Thank you. This is why I think if you look at other cases that apply the reasonableness test, they focus so heavily on whether the noncitizen was delaying proceedings unnecessarily, whether there's evidence of bad faith or dilatory tactics, because that could militate in favor of denying a continuance, especially given the length of a proceeding. But I think in this case, that factor just can't be held against my client. Thank you, Counsel. Judge Heitens, do you have any other questions? Judge Berner? Thank you both, Counsel, for your arguments. We'll take this case under advisement and proceed to the next case. Thank you very much. Thank you.
judges: A. Marvin Quattlebaum Jr., Toby J. Heytens, Nicole G. Berner